Adam K. Derman, Esq.
Abigail J. Remore, Esq.
Peter E. Nussbaum, Esq.
CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: 973.325.1500
Facsimile: 973.325.1501
Email: aderman@csglaw.com; ajremore@csglaw.com; pnussbaum@csglaw.com
*Attorneys for Cool Brands Supply S.A.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| COOL BRANDS SUPPLY S.A., | Civil Action No.: |
| Plaintiff, | *Document Electronically Filed* |
| vs. | **COMPLAINT** |
| LIV GOLF INCORPORATED and HY FLYERS GC, | **Jury Trial Demanded** |
| Defendants. | |

Plaintiff Cool Brands Supply S.A. ("Cool Brands" or "Plaintiff"), by and through its attorneys, for its complaint against defendants LIV Golf Incorporated ("LIV Golf") and Hy Flyers GC ("HFGC", together with LIV Golf, collectively "Defendants"), alleges as follows:

### NATURE OF ACTION

1.      This case arises out of Defendants' improper and illegal use of a nearly identical logo mark to Plaintiff's inherently distinctive and famous logo, both of which are depicted below.

Plaintiff's Mark                    Defendants' Mark

         

Defendants' adoption and use of their knockoff logo nearly twenty years after Plaintiff commenced use and in the face of Plaintiff's federal trademark registration is not just reckless and inexplicable – it is willful infringement and unfair competition.

2.     Specifically, Plaintiff sells footwear and apparel bearing its logo, including but not limited to shoes, hats, and clothing. LIV Golf, a Saudi-Arabian backed professional golf tour, uses its logo on hats, shirts and sweatshirts for one of its teams, HFGC. The similarities between the two marks, particularly when used on clothing, are striking, and are confusing consumers and causing damage to Plaintiff's senior mark and brand.

3.     Plaintiff previously demanded that Defendants cease use of their infringing logo, and they refused. Accordingly, Plaintiff brings this action for trademark infringement, unfair competition and other relief arising under the trademark laws of the United States, specifically 15 U.S.C. § 1051 et seq. (hereinafter "Lanham Act') and the laws of the State of New Jersey.

### THE PARTIES

4.     Plaintiff Cool Brands Supply S.A. is an entity organized and existing under the laws of Argentina with an address of Int. Neyer 1133, Beccar Prov. De, Buenos Aires, Argentina. Plaintiff has offices and a substantial presence in the United States of America.

5.     Plaintiff is the owner of all intellectual property rights associated with the Fallen brand of apparel and footwear that has been in existence since 2003.

6.     LIV Golf is an entity organized and existing under the laws of Delaware with an address of 333 SE 2nd Ave., Suite 2000, Miami, Florida 33131.

7.     LIV Golf is a professional golf tour whose inaugural season took place in 2022. LIV Golf hosts golf tournaments around the world, including in the United States and in New Jersey.

2

8.      HFGC is one of twelve "teams" within LIV Golf. HFGC is captained by world-famous American professional golfer Phil Mickelson, who, upon information and belief, holds an equity stake in HFGC. The other members of the HFGC team are also American professional golfers - James Piot, Brendan Steele, and Cameron Tringale. Upon information and belief, HFGC is an affiliate or subsidiary entity of LIV Golf with an address in Florida.

9.      LIV Golf is financed by the sovereign wealth fund of Saudi Arabia and has been accused by some of sportswashing, namely, attempting to improve the public image of the Saudi Arabian monarchy (which has been criticized for repression, corruption, and human rights abuses) through sports.

10.     LIV Golf advertises and promotes its golf tournaments throughout the United States, including in New Jersey, and conducts business in New Jersey.

11.     HFGC participates in golf tournaments throughout the United States, including in New Jersey, and conducts business in New Jersey.

**JURISDICTION, VENUE AND STANDING**

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because Plaintiff's claims arise under the trademark laws of the United States, 15 U.S.C. § 1051 et seq. In addition, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the dispute is between entities based in the United States on the one hand and a foreign entity on the other hand and because the amount in controversy exceeds $75,000. This Court also has supplemental jurisdiction over Plaintiff's claims that arise under the laws of the State of New Jersey pursuant to 28 U.S.C. §§ 1338(b) and 1367.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, as set forth below, Defendants are subject to this judicial district's personal jurisdiction with respect to this action and a substantial part of the events giving rise to Plaintiff's claims occurred here.

14.     Specifically, LIV Golf held an in-person golf tournament in Bedminster, New Jersey in July 2022, at which HFGC competed, and is scheduled to hold another in-person golf tournament in Bedminster, New Jersey in August, 2023, at which HFGC will compete.

15.     In addition, LIV Golf's tournaments are broadcast throughout the United States on The CW Television Network, in New Jersey on WPIX (Channel 11). LIV Golf's tournaments are also viewed by individuals throughout the United States, including individuals who reside in New Jersey, via mobile applications, including The CW App and the LIV Golf Plus App.

16.     LIV Golf's golf tournaments in New Jersey and HFGC's involvement therein have been and are promoted via New Jersey-focused media outlets. An example of such an article is attached hereto as **Exhibit A**.

17.     Upon information and belief, Defendants offer and sell merchandise, including golf equipment and clothing goods, at each of their tournaments, including at their 2022 tournament in Bedminster, New Jersey.

18.     Upon information and belief, Defendants will offer and sell merchandise, including clothing goods, at their upcoming tournament in Bedminster, New Jersey.

19.     Upon information and belief, Defendants will advertise Defendants' merchandise at their upcoming tournament in Bedminster, New Jersey, including, but not limited to, via HFGC team members wearing apparel bearing the HFGC logo.

4

20. The HFGC logo will no doubt be prominently depicted in advertising and media coverage for LIV Golf's upcoming tournament in Bedminster, New Jersey.

21. Thus, this Court has personal jurisdiction over Defendants because: (a) each party does business in this judicial district; (b) Plaintiff's claims are related to Defendants' contacts with this judicial district; (c) Defendants have intentionally interacted with individuals, governmental entities and organizations in this judicial district; (d) Defendants have purposefully availed themselves of the privilege of conducting business activities within the State of New Jersey and in this judicial district; and (e) in light of the forgoing, the exercise of personal jurisdiction over Defendants in this judicial district comports with traditional notions of fair play and substantial justice.

22. Plaintiff has standing to bring this action pursuant to 15 U.S.C. §§ 1114 and 1125(a) and the statutory and common laws of the State of New Jersey.

## PLAINTIFF'S MARK

23. Plaintiff is the owner of the well-known trademark ("Plaintiff's Mark"), which mark has been in use since 2003 in connection with clothing, footwear, apparel, headwear, and accessories ("Plaintiff's Goods").

24. Plaintiff is the owner of United States Trademark Registration No. 6,874,791 ("Plaintiff's Registration") covering Plaintiff's Mark in International Class 25 for *caps with visors; hats; headwear; pants; shirts; shoes for skateboarding; socks; belts; jackets; jerseys; jogging pants; sports caps and hats; sports pants; sports shirts; sports shoes for skateboarding; sweat shirts; tee shirts*. Printouts from the United States Patent and Trademark

Office's ("USPTO") online databases of Plaintiff's Registration are attached hereto as **Exhibit B**.

25.     Plaintiff and its predecessors-in-interest, affiliates, and licensees have invested a substantial amount of time, money, and other resources advertising, promoting, marketing, and publicizing Plaintiff's Goods provided under Plaintiff's Mark. As a result of these substantial advertising, marketing and promotional efforts, Plaintiff's Mark has acquired substantial consumer recognition and goodwill. Plaintiff's Mark has become an important source indicator that identifies the quality of Plaintiff's Goods. For all of the foregoing reasons, Plaintiff's Mark is an exceedingly valuable asset of Plaintiff's.

26.     Plaintiff's Mark is inherently distinctive for Plaintiff's Goods.

27.     By virtue of Plaintiff's extensive and continuous use of Plaintiff's Mark for twenty years, Plaintiff's Mark has come to be widely recognized by the public as identifying Plaintiff, the Fallen brand, and Plaintiff's Goods.

28.     The Fallen brand and Plaintiff's Mark are among the most famous, recognized and popular brands within the extremely popular skateboarding industry. By way of example, but not limitation, Plaintiff has: (i) been recognized as one of the most popular skateboarding and apparel brands by several sources; (ii) sponsored some of the most famous skateboarders in the world, who have worn Plaintiff's branded apparel on numerous nationally televised competitions; and (iii) been featured in numerous publications and other solicited and unsolicited media features.

29.     The Fallen brand is not just a skateboarding brand but is marketed and sold as a "lifestyle" brand, meaning that it embodies a particular lifestyle symbolizing creativity, risk, and freedom.

30.     As a result of all of the foregoing, Plaintiff's Mark is entitled to a wide scope of protection.

### **DEFENDANTS' INFRINGEMENT**

31.     Nearly twenty years after Plaintiff's commencement and substantial use of Plaintiff's Mark, subsequent to Plaintiff's Mark acquiring public recognition as identifying and distinguishing Plaintiff's Goods from those of others, and following the USPTO's issuance of Plaintiff's Registration, in February 2023, Defendants began using the nearly identical mark

 (the "Infringing Mark") in the United States and internationally in connection with its golf tournaments and goods and services, including apparel, relating thereto.

32.     Specifically, the Infringing Mark identifies one of the "teams" that play in LIV Golf's tournaments – HFGC.

33.     But Defendants have not always used the Infringing Mark to identify HFGC. In fact, the original HFGC logo, utilized in 2022, looked completely different. An image of the original logo is depicted below:



34.     Inexplicably, in or around February 2023, prior to the start of LIV Golf's second season, Defendants announced a rebrand of the HFGC logo, in which the Infringing Mark was first displayed.

35.     The Infringing Mark is virtually identical to Plaintiff's Mark. A side-by-side comparison of the respective marks is set forth below.

<u>Plaintiff's Mark</u>                    <u>Infringing Mark</u>

          

36.     The Infringing Mark appears prominently on Defendants' websites and social media pages, as well as on merchandise including, but not limited to, shirts, pullovers, and hats that are, upon information and belief, sold and distributed at Defendants' tournaments.

37.     Upon information and belief, Defendants are also selling merchandise bearing the Infringing Mark via third party retailers and online.

38.     Defendants' merchandise bearing the Infringing Mark is highly related and, in many cases, identical to Plaintiff's Goods. Examples of the parties' respective goods are depicted below:

| <u>Plaintiff's Items</u> | <u>Defendants' Items</u> |
|---|---|
|  | |





39.     There is substantial crossover between apparel traditionally recognized as golf apparel and skateboarding apparel. By way of example but not limitation, both golf apparel and skateboarding apparel are sold by numerous lifestyle brands. Specifically, Nike, Adidas, Puma, and New Balance – four of the largest athletic shoe and apparel brands in the world – each sell both golf apparel and accessories and skateboard apparel and accessories. In fact, Nike is one of, if not the, biggest players in both sports.

40.     Similarly, golf and skateboarding apparel and accessories can be purchased at the same brick and mortar and online retail stores – including but not limited to Dick's Sporting Goods, Champs Sports, and Scheels.

41.     Multiple news outlets have discussed the overlap between skateboarding culture and golf. Examples of such press coverage are attached hereto as **Exhibit C**.

42.     Further, both golf and skateboarding apparel are not exclusively sold to those who play their respective sports. Many of the biggest brands that sell golf or skateboarding apparel are considered lifestyle brands, not brands specific to either golf or skateboarding, respectively. By way of example, Nike (which sells both golf and skateboarding apparel) is considered one of the biggest, if not the biggest, American lifestyle brand. Similarly, Supreme, a lifestyle brand with its roots in skateboarding, has teamed up with Lacoste on more than one occasion to release lines that, as Golf Digest put it, "lend themselves perfectly for those who wish for more traditional golf attire…" or "those who would rather shake up their golf clothing options" (see Exhibit C above).

43.     Even if there were no overlap, given the strength of Plaintiff's Mark, Plaintiff can easily bridge any gap between any non-identical goods and services of the respective parties.

44.    For all the foregoing reasons, Defendants' goods and services provided under the Infringing Mark are directed toward the same class of consumers, such that Plaintiff and Defendants are unquestionably in competition with respect to their respective goods and services.

45.    Defendants' use of the essentially identical Infringing Mark is likely to cause confusion, mistake, or deception as to the source or origin of Defendants' goods and services. As a result of Defendants' use of the Infringing Mark in connection with goods that are identical to many of Plaintiff's Goods, consumers are likely to believe that Defendants' goods and services are provided by, sponsored by, endorsed by, approved by, licensed by, or in some other way legitimately connected to Plaintiff, which they are not.

46.    Since it launched in 2022, LIV Golf has been the subject of a great deal of media attention and scrutiny.

47.    Upon information and belief, Defendants have expended hundreds of millions of dollars (if not more) in launching and publicizing their golf tournament.

48.    In addition to displaying the Infringing Mark at Defendants' tournaments, in marketing and advertising for Defendants, and on websites and social media pages relating to Defendants, the Infringing Mark has been featured on worldwide televised major golf tournaments. For example, HFGC's captain and apparent equity stakeholder, Phil Mickelson, wore apparel bearing the Infringing Mark at the first two major golf tournaments of 2023 – the Masters and the PGA Championship. Mr. Mickelson played on all four days of each tournament and was broadcast to millions of consumers worldwide (including in the United States on CBS and ESPN) wearing the Infringing Mark. For instance, the final round of the Masters averaged over twelve million viewers. During that round, Mr. Mickelson (a) played

wearing the Infringing Logo; (b) was, at one point, the leader in the clubhouse; (c) became the oldest golfer ever to post a top-five finish at the Masters; and (d) finished tied for second place. Mr. Mickelson's performance at the 2023 Masters garnered much press attention (an example of which is depicted below), and as a result, videos and photographs of Mr. Mickelson wearing the Infringing Logo reached even more consumers around the world.



Although Mr. Mickelson did not have quite as impressive of an outing at the PGA Championship, given his fame and LIV Golf's notoriety, he still received substantial press attention and television coverage – yet again wearing the Infringing Logo. An example of such press coverage is depicted below.



☰ NEWS & TOURS

PGA CHAMPIONSHIP 2023

## PGA Championship 2023: In odd post-round interview, Phil Mickelson does his best to bite his tongue

By Dave Shedloski · May 21, 2023





Maddie Meyer/PGA of America

**D** OCHESTER, N.Y. — Phil Mickelson tends to make news when he speaks. On Sunday, he tried not to make news, which was news all the same.



49.     Despite Defendants only commencing use of the Infringing Mark just a few months ago, Plaintiff has already received numerous customer comments and complaints regarding a supposed affiliation with Defendants, some of which are critical of Plaintiff in light of Defendants' reputation as an effort to distract from their funding monarchy's human rights abuses and cleanse Saudi Arabia's repressive global image.

50.     In addition, third parties have publicly commented on the similarities between the marks. Examples of such commentary are depicted below:

14

**NUCLR GOLF** ✓
@NUCLRGOLF

The HY Flyers logo (left) looking similar to
@fallenfootwear (right) 🤔



5:51 PM · Feb 7, 2023 · **37.7K** Views

6 Retweets   1 Quote   94 Likes   1 Bookmark



← **Tweet**

**HyFlyers GC** ✓
@HyFlyers_GC

👋 @PhilMickelson

10:45 AM · Feb 7, 2023 · **116.8K** Views

6 Retweets   2 Quotes   138 Likes

**Alan F.** @Afontane10 · Feb 7
Hey @fallenfootwear have you guys sent your cease and desist to the
@HYFlyers_GC for attempting to copy your logo?
1   15   955

**Andrew T** ✓ @dwmpandrew · Feb 7
Jesus lol uncanny resemblance
1   3   810

**Alan F.** @Afontane10 · Feb 7
yeah....direct rip off if you ask me

15



r/golf • 2 mo. ago
by No-1likesCliffjumper

**Is Phil Mickelson sponsored by a skate company?**

I was watching the coverage of the Masters and in an interview with Phil Mickelson he was wearing a shirt and hat with the Fallen skate brand logo. Did my eyes deceive me or what logo is that? It looked like 2 letter "F"s back to back.

⇧ 5 ⇩        💬 8        ⬆ Share

Peacock • Promoted

Hit new movies from theaters, buzzworthy Originals, thrilling live sports, and so much more.

peacocktv.com        Sign Up

Sort by: 🔒 Best ⌄                                        8 comments

➕ Add a Comment

**Quokka7926** • 2 mo. ago

That's actually the logo for his team on LIV the "Hy Flyers"

I had never heard of Fallen before but wow it's so similar!

⊖   ⇧ 6 ⇩   💬 Reply   ⬆ Share   •••

**wilderad** • 2 mo. ago

Do I sense another lawsuit on its way for LIV? This time for copyright infringement.

⇧ 4 ⇩   💬 Reply   ⬆ Share   •••

⊕ 3 more replies

**No-1likesCliffjumper** 🎤 • 2 mo. ago

I forgot they had teams. I really was hoping it was the Fallen skate brand because it would be pretty poetic cause of all the headlines "Phil's fall from grace..." blah blah and everything. All then to become being sponsored by a brand called Fallen would be sweet.

⇧ 1 ⇩   💬 Reply   ⬆ Share   •••

⊕ 1 more reply

16



## Golfer Phil Mickelson Now Sponsored by Fallen?

Eyebrows were raised when Phil Mickelson strolled onto the golf course

POSTED 2 MONTHS AGO BY **DANNY BROWN**

Renowned professional golfer Phil Mickelson caused a buzz among skateboarders as he recently stepped onto the golf course head to toe in Fallen apparel. The 5-time major champion turned heads and sparked conversations in the skateboarding world, causing speculations that he's now sponsored by Fallen.



Mickelson is renownedly known for pushing the boundaries of traditional golf fashion. Mickelson's recent sighting in Fallen apparel took it to a whole new level. Some were left wondering if the flick marks on his shoes were real, who knows, maybe he does skate and just came straight from shredding the local park and went directly into a pro golf game haha! Now that would be a baller move!

**Related:**   FALLEN FOOTWEAR   FALLEN FOOTWEAR TEAM   PHIL MICKELSON   GOLF

17

51.     Defendants' acts complained of hereinabove are unlawful, willful, and knowingly performed with the intent and result of injuring Plaintiff.

52.     Defendants' continued use, marketing and promotion of the Infringing Mark will result in the misappropriation of and the profiting off of the goodwill of Plaintiff, as consumers are likely to be diverted to Defendants' goods and services in their initial purchasing efforts resulting in initial interest confusion.

53.     Defendants' continued use, promotion, and marketing of the Infringing Mark and products bearing the Infringing Mark will also likely cause reverse confusion, as due to the size and scope of Defendants' business and the amount of media attention they and Mr. Mickelson receive, consumers are likely to believe that Defendants are the senior users of the confusingly similar Infringing Mark, which they are not. Further, due to the size and scope of Defendants' business and the amount of media attention directed to Defendants and Mr. Mickelson, consumers are likely to believe that Plaintiff's Mark infringes upon Defendants' Infringing Mark, which it does not.

54.     As a result of Defendants' conduct, Plaintiff and its brand has been seriously and irreparably harmed and, unless this Court enjoins Defendants' wrongful acts, Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT I

## FEDERAL TRADEMARK INFRINGEMENT

55.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

56.     Defendants, through the conduct described above, are providing in interstate commerce goods and services under a mark that is a colorable imitation of Plaintiff's registered

mark, which is likely to cause confusion or mistake and/or to deceive in violation of the Lanham Act Section 32(1) (15 U.S.C. § 1114(1)).

57.　　Upon information and belief, Defendants have committed such acts of infringement willfully and with full knowledge of Plaintiff's prior use and registration of, and rights in and to, Plaintiff's Mark.

58.　　As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT II

## UNFAIR COMPETITION UNDER THE LANHAM ACT

59.　　Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

60.　　Defendants, through the conduct described above, are providing goods and services under a mark that is a colorable imitation of Plaintiff's protectable mark, which is likely to cause confusion or mistake and/or to deceive in violation of the Lanham Act Section 43(a) (15 U.S.C. § 1125(a)).

61.　　Upon information and belief, Defendants have committed such acts of false designation of origin and false description and representation willfully and with full knowledge of Plaintiff's prior use and registration of, and common law rights in and to, Plaintiff's Mark.

62.　　As a result of Defendants' acts of unfair competition, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT III

### REVERSE CONFUSION

63.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

64.     Plaintiff also alleges reverse confusion under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) and 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65.     Plaintiff is the senior user of Plaintiff's Mark, which is valid, protectable, and the subject of a federal trademark registration.

66.     Defendants are the junior users of the Infringing Mark, which they have used without the consent of Plaintiff in a manner that is likely to cause confusion among ordinary purchasers as to the source of the goods.

67.     In adopting and promoting the Infringing Mark, Defendants have appropriated for themselves goodwill that rightfully should belong to Plaintiff.

68.     Upon information and belief, Defendants adopted the Infringing Mark deliberately, willfully, and with full knowledge of Plaintiff's prior use of, registration of, and rights in, its senior Plaintiff's Mark.

69.     Due to the larger scope and size of Defendants' business, and the great degree of media attention that Defendants and Mr. Mickelson have received, Defendants' actions are likely to lead the public to conclude, incorrectly, that Plaintiff's goods originate from Defendants, which will damage both Plaintiff and the public.

70.     Defendants' unauthorized use of the Infringing Mark in interstate commerce constitutes reverse confusion and is likely to cause consumer confusion, mistake, or deception.

71.     As a direct and proximate result of Defendants' infringement and the resulting reverse confusion, Plaintiff has suffered and will continue to suffer loss of income, profits, and goodwill, and Defendants have and will continue to unfair acquire income, profits, and goodwill.

72.     Unless this Court enjoins Defendants' wrongful acts, Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

<u>COUNT IV</u>

<u>COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION</u>

73.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as of they were set forth in full herein.

74.     Defendants' aforesaid acts constitute infringement of Plaintiff's rights in Plaintiff's Mark and tend to falsely describe or represent that Defendants' goods and services are provided by, or sponsored by, or approved by, or endorsed by, or licensed by, or affiliated with or in some other way legitimately connected to Plaintiff and are of the same character, nature, and quality as the goods provided by Plaintiff, thereby damaging Plaintiff's reputation.

75.     Defendants' aforesaid acts constitute acts of unfair competition against Plaintiff under the common law of the State of New Jersey, which acts have been committed knowingly and willfully and have injured Plaintiff in its trade and business.

76.     By reason of the aforesaid acts, Defendants have caused damage to Plaintiff and the goodwill associated with Plaintiff's Mark.

77.     As a result of Defendants' acts of unfair competition, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT IV

### UNFAIR COMPETITION UNDER N.J.S.A. § 56:4-1

78.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

79.     Defendants' unauthorized use of the Infringing Mark falsely indicates that Defendants and/or HFGC's team members (including Mr. Mickelson) are connected with, sponsored, endorsed, authorized, approved by, or affiliated with Plaintiff, which they are not.

80.     Defendants' unauthorized use of the Infringing Mark is likely to cause confusion, mistake, or deception as to the source or affiliation of Defendants' goods and services.

81.     Defendants' unauthorized use of the Infringing Mark allows Defendants to receive the benefit of the goodwill in Plaintiff's Mark, which Plaintiff has established at great labor and expense.

82.     Defendants' aforesaid acts constitute unfair competition in violation of the New Jersey Unfair Competition Statute (N.J.S.A. § 56:4-1) and the common law of the State of New Jersey.

83.     Defendants' aforesaid acts were and are committed willfully.

84.     As a result of Defendants' actions, Defendants are being unjustly enriched.

85.     As a result of Defendants' acts complained of herein, Plaintiff has been harmed in an amount to be determined at trial and will continue to be harmed and will suffer irreparable injury unless Defendants are enjoined from the foregoing actions.

## COUNT V

## INJUNCTION

86.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

87.     Plaintiff will be irreparably harmed if Defendants are not enjoined from using the Infringing Mark in connection with the provision of any goods and services.

88.     Customers and potential customers of Plaintiff's and Defendants' goods and services will be confused if Defendants are not enjoined from using the Infringing Mark.

89.     Plaintiff does not have an adequate remedy at law for Defendants' ongoing misconduct, and entry of an injunction will serve the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor and against Defendants as follows:

1.     That Defendants and each of their officers, agents, servants, distributors, affiliates, employees, attorneys, team members, and representatives and all those in privity or acting in concert with Defendants, and each of them, be permanently enjoined and restrained from, directly or indirectly:

(a)     Using the Infringing Mark or any other mark or marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs, or marks in connection with the provision of its goods and services;

(b)     Using in any other way any other marks or designations so similar to the aforesaid Plaintiff's Mark as to be likely to cause confusion, mistake or deception;

(c)     Falsely designating the origin, sponsorship, or affiliation of the Defendants' goods or services in any manner;

23

(d)     Otherwise competing unfairly with Plaintiff in any manner;

(e)     Using any words, names, styles, designs, titles, designations, or marks which create a likelihood of injury to the business reputation of Plaintiff and the goodwill associated therewith;

(f)     Using any trade practices whatsoever including those complained of herein, which tend to unfairly compete with or injure Plaintiff's business and goodwill pertaining thereto;

(g)     Using any trade practices whatsoever including those complained of herein, which tend to deceive their intended audience; and

(h)     Continuing to perform in any manner whatsoever any of the acts complained of in this Complaint.

2.     That the Defendants be required to pay to Plaintiff compensatory damages for the injuries sustained by Plaintiff in consequence of the unlawful acts alleged herein and that such damages be trebled pursuant to 15 U.S.C. § 1117 because of the willful and unlawful acts as alleged herein.

3.     That the Defendants be required to account for and pay over to Plaintiff all gains, profits and advantages derived from the unlawful activities alleged herein.

4.     That Defendants be required to deliver for destruction all stationery, signs, advertisements, promotional flyers, cards, brochures, promotional materials, and any other written materials which bear the Infringing Mark or any other mark or marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs, or marks, together with all plates, molds, matrices and other means and materials for making or reproducing the same.

5.     That Defendants be required to remove any and all online use of the Infringing Mark or any other mark or marks confusingly similar thereto, alone or in combination with

other words, names, styles, titles, designs or marks, including via any and all of their websites, social media accounts or otherwise, and that Defendants be required to take steps necessary to remove any use of the Infringing Mark, or any other mark or marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs or marks, that is associated with any of Defendants' advertised goods or services on any third party website or online source.

6.      That the Defendants be required to pay to Plaintiff all of its litigation expenses, including but not limited to reasonable attorneys' fees and the costs of this action.

7.      That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

CHIESA SHAHINIAN & GIANTOMASI PC
*Attorneys for Cool Brands Supply S.A.*

By:      /s/ *Adam K. Derman* /
ADAM K. DERMAN
ABIGAIL J. REMORE
PETER E. NUSSBAUM

Dated: June 8, 2023

## JURY DEMAND

Plaintiff demands trial by jury of all claims and defenses in this action so triable.

CHIESA SHAHINIAN & GIANTOMASI PC
*Attorneys for Cool Brands Supply S.A.*


By:     /s/ *Adam K. Derman* /
ADAM K. DERMAN
ABIGAIL J. REMORE
PETER E. NUSSBAUM

Dated: June 8, 2023


## LOCAL RULE 11.2 CERTIFICATION

I certify that this matter is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding; no other action, arbitration or administrative proceeding is contemplated to my knowledge; and I know of no other parties who should be joined in this action at this time.


CHIESA SHAHINIAN & GIANTOMASI PC
*Attorneys for Cool Brands Supply S.A.*


By:     /s/ *Adam K. Derman* /
ADAM K. DERMAN
ABIGAIL J. REMORE
PETER E. NUSSBAUM

Dated: June 8, 2023

26